FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

2012 SEP 26  PM 3: 36

CLERK_____
SO. DIST. OF GA.

FRANCINE FRIEDMAN,          )
                           )
        Plaintiff,          )
                           )
v.                          )     CASE NO. CV410-113
                           )
GEORGIA DEPARTMENT OF       )
BEHAVIORAL HEALTH AND       )
DEVELOPMENTAL DISABILITIES, )
                           )
        Defendant.          )
_____ )

### O R D E R

Before the Court is Defendant Georgia Department of Behavioral Health and Developmental Disabilities' ("GDBH") Motion for Summary Judgment. (Doc. 27.) Plaintiff has responded in opposition. (Doc. 35.) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims for harassment and discrimination in violation of Title VII of the Civil Rights Act, and claim under the Georgia Whistleblowers Act are dismissed. Plaintiff's Title VII claim of retaliation based on her complaints of religious harassment and gender discrimination will proceed to trial.

### BACKGROUND

This case involves allegations of harassment, discrimination, and retaliation based on both gender and

religion. In November of 2007, Plaintiff—a female, Jewish doctor—accepted a position as Clinical Director of Georgia Regional Hospital ("Georgia Regional") in Savannah, Georgia. (Doc. 35 at 1.) During the span of her employment, Plaintiff was first involuntarily demoted to Director of Admissions in September of 2008 (Doc. 4 ¶ 26), then terminated on May 28, 2009 (id. ¶ 41).

According to Plaintiff, the United States Department of Justice ("DOJ") conducted an investigation into conditions at Georgia Regional soon after she began her employment. (Doc. 35 at 2.) Agreeing with two issues identified by the DOJ, Plaintiff informed the DOJ of her concerns that the administration of Georgia Regional was covering up incidents involving patients, including preventable patient deaths and sexual encounters between HIV positive and non-HIV positive patients. (Id.) Plaintiff contends that she submitted an April 2009 memo to several administrators at Georgia Regional that identified areas of concern in relation to an upcoming DOJ audit, scheduled for June of 2009. (Id.) However, Plaintiff's employment was terminated in May of 2009. (Id. at 4.) According to Plaintiff, she would have been able to relate her concerns to the DOJ during its June 2009 audit of

Georgia Regional had Defendant not terminated her employment in May.

In addition, Plaintiff alleges that, during the course of her employment, she was subjected to six occasions of religious harassment, including being called an "arrogant Yankee Jew" by her colleagues and receiving an email depicting cremation ovens with the caption "we told you Yankee Jew bitch that we would get you fired." (Id. at 6, 10.) Plaintiff contends that, despite being informed of the inappropriate harassment, Defendant failed to take any remedial action to prevent further incidents. (Id. at 9.)

Plaintiff also alleges that Defendant imposed different terms and conditions on her employment when compared to male Clinical Directors. (Id. at 11.) Specifically, Plaintiff contends that the administration of Georgia Regional failed to provide her with adequate support with respect to her management responsibilities as Clinical Director, ultimately resulting in her involuntary demotion to Director of Admissions in September of 2008. (Doc. 4 ¶ 26.) According to Plaintiff, the male doctor that replaced her as Clinical Director was provided with more support from the administration than she received while holding the same position. (Doc. 35 at 11-12.)

3

According to Defendant, the derogatory comments made by Plaintiff's colleagues were not sufficiently severe or pervasive to create an abusive work environment. (Doc. 27, Attach. 1 at 5.) With respect to the email, Defendant contends that it conducted an investigation, but was unable to determine the origin of the email. (Id. at 2.) Finally, Defendant alleges that it terminated Plaintiff's employment because she failed to attend a professional conference despite being given one-week of administrative leave for her participation. (Id.)

On May 10, 2010, Plaintiff filed her complaint[1] in this Court. (Docs. 1, 4.) In her complaint, Plaintiff alleges[2] claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-1 to 2000e-17, for harassment based on her religion (Doc. 4 ¶ 44), discrimination in the terms and conditions of her employment based on her gender (id. ¶ 47), and retaliation for complaining to management about religious slurs and reporting to the DOJ unsafe conditions

---

[1] Plaintiff filed an amended complaint on September 2, 2010, correcting her misidentification of Defendant. (Doc. 4.) Because all other parts of the two complaints are identical, the Court will refer to the amended complaint as, simply, the complaint.

[2] The complaint states that Plaintiff exhausted her administrative remedies and filed her complaint within ninety days of receiving a right-to-sue letter from the Equal Employment Opportunity Commission. (Doc. 4 ¶¶ 11, 12.) Defendant did not offer any argument concerning these issues, which the Court now deems as having been waived.

present at Georgia Regional (id. ¶¶ 44, 54). In addition, Plaintiff alleged one claim based on state law—violation of the Georgia Whistleblowers Act, O.C.G.A. § 45-1-4, (id. ¶ 53).[3]

On October 11, 2011, Defendant filed its Motion for Summary Judgment. (Doc. 27.) In its motion, Defendant argues that Plaintiff's religious harassment claim fails because the statements and email are insufficiently severe or pervasive to warrant relief. (Id. at 5-10.) With respect to Plaintiff's claim of gender discrimination, Defendant contends that Plaintiff is unable to establish a prima facie case because she cannot show that similarly situated male employees were treated less harshly for failing to attend a professional conference. (Id. at 13.) Defendant reasons that, even if Plaintiff established a prima facie case, Defendant's proffered non-discriminatory reason—failing to attend the conference—precludes relief. (Id. at 14.) Regarding Plaintiff's claim of retaliation, Defendant contends that Plaintiff has offered no evidence that religion or gender played a role in Defendant's decision to reassign her to Director of Admissions or terminate her employment. (Id. at 17.) Also, Defendant

---

[3] By consent, the parties voluntarily dismissed Plaintiff's claim for intentional infliction of emotional distress. (Doc. 41.)

again avers that its proffered non-discriminatory reason
for taking the employment action precludes relief. (Id.)
With respect to the Georgia Whistleblowers Act, Defendant
maintains that the Eleventh Amendment to the United States
Constitution precludes Defendant from being subject to suit
for this claim in federal court. (Id. at 18.)

In her response, Plaintiff argues that the religious
harassment was sufficiently severe or pervasive to warrant
relief. (Doc. 35 at 10-11.) In addition, Plaintiff
maintains that she was subject to gender discrimination
when the administration of Georgia Regional failed to
provide her with the adequate support to perform her duties
as Clinical Director. (Id. at 11-12.) Finally, Plaintiff
contends that she has sufficiently alleged a prima facie
case of retaliation and that Defendant's proffered non-
discriminatory reason for her reassignment and termination
are merely pretextual. (Id. at 14-16.) Plaintiff offered
no response to Defendant's argument that, under the
Eleventh Amendment, it was immune from suit in federal
court for any alleged violation of the Georgia
Whistleblowers Act.

6

**ANALYSIS**

I.   SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323.  The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant.  Matsushita, 475 U.S. at 587-88.  However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Id. at 586.  A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice.  See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).  Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment."  Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II.  PLAINTIFF'S HARASSMENT CLAIM

Plaintiff alleges that she was subject to religious harassment in the workplace based on six derogatory references to her Jewish faith by colleagues, and an email depicting cremation ovens with the caption "we told you Yankee Jew bitch that we would get you fired." (Doc. 35 at 6, 10.)  In its Motion for Summary Judgment, Defendant argues that these incidents are "[in]sufficiently severe or pervasive to alter the terms or conditions of employment and create an abusive working environment." (Doc. 27, Attach. 1 at 5.)  In her response, it appears Plaintiff is contending that, while the conduct may not have been pervasive, it was sufficiently severe to impose liability on Defendant.

For workplace harassment to rise to an actionable level under Title VII, the inappropriate behavior must create an environment that " 'a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s]. . . to be abusive.' " Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)) (alteration in original).  This standard, therefore, encompasses both objective and subjective components. Id.  When assessing the objective severity of

9

the conduct, the Court should consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. (citing Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997)).

Applying this standard, the Court is unable to conclude that the harassment suffered by Plaintiff was objectively severe such that Defendant should be liable under Title VII. First, the offensive conduct was infrequent at best. Plaintiff worked at Georgia Regional for approximately eighteen months and only points to seven instances—six comments and one email—of religious harassment. While the Court does not discount either the emotional impact of the comments or the disturbing nature of the email, the infrequent and off-hand nature of these comments militate in favor of finding that the harassment was not objectively severe. Compare Guthrie v. Waffle House, Inc., 460 F. App'x 803, 804-06 (11th Cir. 2012) (finding a few dozen instances over eleven months infrequent), and Mendoza v. Borden, Inc., 195 F.3d 1238, 1248 (11th Cir. 1999) (finding five instances over eleven months frequent), with Reeves v. C.H. Robinson Worldwide,

Inc., 594 F.3d 798, 804 (11th Cir. 2010) (finding daily occurrences of inappropriate behavior frequent), Dees v. Johnson Controls World Servs., Inc., 168 F.3d 417, 418 (11th Cir. 1999) (same), and Miller, 277 F.3d at 1276 (same). Simply put, the infrequent nature of the allegedly offensive behavior fails to establish that the conduct was so pervasive as to hold Defendant, as Plaintiff's employer, liable under Title VII for the relatively few instances of inappropriate behavior by its employees.

Second, the severity of the comments is insufficient to impose liability on Defendant. Both the Supreme Court and the Eleventh Circuit Court of Appeals have noted that Title VII is only implicated where the workplace is " 'permeated with discriminatory intimidation, ridicule and insult,' " not where the comments amount to little more than " 'mere utterance of an . . .epithet.' " Miller, 277 F.3d at 1276-77 (quoting Harris, 510 U.S. at 21). In this case, the offhand nature of the comments suggest that Plaintiff was not bombarded with religious intimidation, ridicule, and insults in the workplace. Rather, these infrequent and casual statements, while derogatory, are more akin to the casual utterance of an epithet. This, of course, does not mean that the Court has discounted the disturbing nature of the email. However, the Court is

11

unable to conclude that this one instance of unsettling conduct so permeated the workplace with discriminatory intimidation such that Defendant should be held liable under Title VII. In short, this factor weighs against finding that the harassment was objectively severe.

Lastly, the allegedly offensive conduct, with the possible exception of the email, was not physically threatening or humiliating. Rather, the offhand comments concerning Plaintiff's religion were offensive utterances designed to express disdain for Plaintiff. They did not serve to instill fear or debase Plaintiff. Therefore, this factor weighs against finding that the harassment was objectively severe.

In conclusion, even if the Court were to conclude that the offensive conduct interfered with Plaintiff's job performance, the remaining three factors all weigh in favor of finding that the conduct experienced by Plaintiff was not objectively severe enough to warrant the imposition of liability under Title VII. The allegedly offensive conduct was simply too infrequent; did not permeate the workplace with discriminatory intimidation, ridicule, and insult; and was not physically threatening or humiliating. As a result, Defendant's motion is granted with respect to Plaintiff's Title VII claim of religious harassment.

III. PLAINTIFF'S GENDER DISCRIMINATION CLAIM

Plaintiff alleges that she "was subjected to different terms and conditions for employment based upon her gender." (Doc. 35 at 11.)   While not clear, it appears that Plaintiff is alleging that Defendant improperly discriminated against her by failing to provide her with the same level of assistance in carrying out her duties that it provided her male replacement.   (Id. at 11-12.)   In its Motion for Summary Judgment, Defendant argues that Plaintiff is unable to establish a prima facie case of discrimination.

A plaintiff may establish a claim of unlawful gender discrimination by presenting either direct of circumstantial evidence or discrimination.   Underwood v. Perry Cnty. Comm'n, 431 F.3d 788, 793 (11th Cir. 2005).   To assess a claim based on circumstantial evidence, such as Plaintiff's claim in this case, the Court must employ the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).   Underwood, 431 F.3d at 794.   Under this test, a plaintiff may establish a prima facie case of gender discrimination by providing four elements: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) she was

replaced by someone outside the protected class. Cuddleback v. Fla. Bd. Of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). If a plaintiff can demonstrate the elements of a prima facie case, then a burden of production falls to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1136 (11th Cir. 2000), overruled on other grounds by Mander v. Lee, 338 F.3d 1304 (11th Cir. 2003). If the employer articulates a legitimate non-discriminatory reason, the burden then shifts back to the plaintiff to demonstrate that the employer's stated reason was a pretext for discrimination. Id. Should the plaintiff, at this point, fail to establish the presence of a genuine issue of material fact that the employer's reason was merely pretextual, then the employer is entitled to summary judgment in its favor. Cuddleback, 381 F.3d at 1235.

In this case, Plaintiff has failed to establish that she suffered an adverse employment action. An employee suffers an adverse employment action when there is "a serious and material change in the terms, conditions, or privileges of employment," Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001), " 'such as

14

hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits' " Webb-Edwards v. Orange Cnty. Sheriff's Office, 525 F.3d 1013, 1031 (11th Cir. 2008) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Importantly, an adverse employment action must impart some tangible harm, not necessarily economic, on the employee. Davis, 245 F.3d at 1239.

Plaintiff supports her claim by generally stating that the administration at Georgia Regional did not provide her with all the support in carrying out her duties that it provided to her male replacement. Even assuming these allegations are true, they are not adverse employment actions that would impose liability under Title VII. Any failure to provide Plaintiff with the same level of resources provided to her replacement did not impact the term, conditions, or privileges of her employment. The purpose of Title VII is to prohibit an employer from changing an employee's status based solely on the employee's race, color, religion, gender, or national origin. The Court has located no case, and Plaintiff has failed to provide one, where a court imposed liability under Title VI for an employer's discriminatory failure to provide its employee with a sufficient level of support

from management.   Therefore, Defendant's Motion for Summary
Judgment is **GRANTED** with respect to Plaintiff's Title VII
claim for discrimination in the terms and conditions of her
employment.

## IV.   PLAINTIFF'S RETALIATION CLAIM

Plaintiff has brought a retaliation claim under Title
VII based on Defendant's decisions to demote her from
Clinical Director to Director of Admissions, and to
terminate her employment.   (Doc. 4 ¶ 44-45.)   To establish
a prima facie case of retaliation, a plaintiff must show
(1) that she engaged in statutorily protected activity; (2)
that she suffered a materially adverse action; and (3) that
there was a causal connection between the two events.
E.g., Little v. United Tech., 103 F.3d 956, 959 (11th Cir.
1997).[4]   To establish the necessary causal connection, "a
plaintiff merely has to prove that the protected activity
and the negative employment action are not completely
unrelated." E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d

_____

[4] Title VII's anti-retaliation provision, 42 U.S.C. 2000e-
3(a), provides that "[i]t shall be an unlawful employment
practice for an employer to discriminate against any of his
employees or applicants for employment. . . because he has
opposed any practice made lawful by [42 U.S.C. § 2000e], or
because he has made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding,
or hearing under this subchapter." As a result, any claim
by Plaintiff that Defendant retaliated against her based on
the DOJ investigation is without merit and need not be
discussed further.

16

1564, 1571-72 (11th Cir. 1993).  "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action."  Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).  Evidence of the employer's awareness, coupled with a close temporal proximity between the employee's protected conduct and the adverse employment action, is sufficient circumstantial evidence to create a genuine issue of material fact concerning a causal connection.  Brungart v. Bellsouth Telecomm., Inc., 231 F.3d 791, 799 (11th Cir. 2000); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (seven weeks constituted temporal proximity sufficient to demonstrate a causal nexus between protected activity and adverse employment action in an ADA case).  Should a plaintiff establish a prima facie case of retaliation, "the employer has the burden of articulating a legitimate non-discriminatory reason for the challenged employment decision."  Id.  The plaintiff must then demonstrate that the proffered non-discriminatory reason is mere pretext for the unlawful retaliation.  Id. (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997)).

In its Motion for Summary Judgment, Defendant argues that Plaintiff's initial complaints of harassment or discrimination were not objectively reasonable. (Doc. 27, Attach. 1 at 17.) In addition, Defendant contends that it has established a legitimate, non-discriminatory reason for Plaintiff's termination—failure to attend a professional conference she was granted one-week of administrative leave to attend. (Id.) In her response, Plaintiff maintains that she engaged in a statutorily protected activity and that Defendant's proffered reason for her termination is simply pretext.

In this case, Plaintiff has established a prima facie case of retaliation. Indeed, the only argument offered by Defendant is that any initial complaint of harassment or discrimination was objectively unreasonable because Plaintiff stated in her deposition that she had "no evidence that her religion or gender played a factor in the decision to reassign or terminate her." (Id.) Plaintiff, however, contends that her disposition testimony is that "she never had an 'overt' reason to believe that the termination was based upon her reporting the religious harassment." (Doc. 35 at 13.) Taken in the light most

favorable to Plaintiff,[5] this statement is not an unequivocal denial that her reports of harassment played no role in her termination. Rather, Plaintiff is merely stating that any harassment or discrimination was not plainly apparent. Cf. Black's Law Dictionary 1137 (8th ed. 2004) (defining overt as open and obvious). Given this testimony, a jury would be entitled to find that Plaintiff's initial complaints of harassment and discrimination were objectively reasonable.

Next, Defendant contends that its decision to terminate Plaintiff's employment was not in retaliation for her prior complaints, but was based on Plaintiff's failure to attend a professional conference she had been granted one-week paid leave to attend. (Doc. 27, Attach. 1 at 17-18.) In response, Plaintiff contends that she did attend a portion[6] of the conference, participating in several classes. (Doc. 35 at 14.) In addition, Plaintiff contends that she provided Defendant with a copy of her receipt for her lodgings during the conference.

---

[5] Neither party thought to include a transcript of the actual deposition in the record. Therefore, the Court accepts at face value the parties' respective interpretations of that testimony.

[6] Plaintiff maintains that she was unable to attend the entire conference because her back had given out. (Doc. 35 at 3.)

While it is inevitably for a jury to decide, the statements presented by Plaintiff, if believed, call into question the conduct that Defendant cites as non-discriminatory reasons for Plaintiff's termination.[7] If a jury were to accept this testimony, it would be entitled to find that Defendant manufactured the failure to attend the conference as pretext for terminating Plaintiff in retaliation for her earlier complaints. For this reason, the Court finds that Plaintiff has created a genuine issue of material fact that her demotion and termination were in retaliation for her earlier complaints of religious harassment and gender discrimination. Accordingly, Defendant is not entitled to summary judgment on this issue.

## V. PLAINTIFF'S CLAIM UNDER O.C.G.A. § 45-1-4

In its Motion for Summary Judgment, Defendant argues that the Eleventh Amendment to the United States Constitution grants it immunity from suit in federal court for this state-law claim. Plaintiff failed to offer any response in opposition. Therefore, the Court deems this claim as abandoned and grants Defendant's request for summary judgment. See S.D. Ga. L.R. 7.5 ("Failure to

---

[7] The Court notes that Defendant failed to proffer any non-discriminatory reason for Plaintiff's demotion.

respond within the applicable time period shall indicate there is no opposition to a motion.")

### CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff's claims for harassment and discrimination in violation of Title VII of the Civil Rights Act, and claim under the Georgia Whistleblowers Act are dismissed. Plaintiff's Title VII claim of retaliation based on her complaints of religious harassment and gender discrimination will proceed to trial.

SO ORDERED this 26th day of September 2012.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

21